Thank you. May it please the Court. Tyler Atkinson with McManus Faulkner, here on behalf of plaintiff appellant Dr. Show-Huey Chang. If I may, I'd like to reserve five minutes. This appeal follows a unanimous jury verdict finding that two sheriff's deputies committed excessive force and also that their sheriff ratified their conduct. After the jury rendered its decision, the district court granted a motion for judgment as a matter of law as to the Monell liability. We're familiar with the background counsel. We're here talking about a reduction in your fees, correct? Well, we're talking about the fact that the district court took away the Monell liability and then decided that I'll give you plenty of time to get to that. But what we're really talking about is if your request for $950,000 in fees had been granted, we wouldn't be here. We — your positions might have been reversed, but you wouldn't be here, correct? I don't know that that's the case, Your Honor. I think the Monell piece was a very important piece. One of the reasons we pursued this — Let me see if I can refine it this way. Your original request was for $950,000? I actually believe it was more on the order of $850,000. Eight or nine. The district court, that amount was reduced to $450,000? Approximately, yes. And do I understand correctly — correct me if I'm wrong — there's no dispute about that reduction? Well, Your Honor, part of that reduction was based on — The Monell? Speaking about attorney's fees, part of the decision to reduce the fees was based on a determination that there was not complete success. I think the judge used the term limited success. I believe the judge arrived at that conclusion of limited success because the judge was — Because of the Monell. Because of the Monell. So we can't avoid Monell. And it also goes to the goal of the case, of what it vindicated, and why this is socially valuable work. So we can't avoid Monell. And to look at Monell, we have to look at ratification. On the subject of ratification, the jury was instructed using the elements of this circuit's model instruction 9.7. In finding that Sheriff Smith ratified the deputy's conduct, the jury necessarily found — Did you take her deposition? The deposition of Sheriff Smith? We did not, nor can I say that we would have been permitted to by the county. And there wasn't any — you never got a record of the physical claim of her complaint? I believe there was an oral aspect of it. The hospital. In the hospital, I cannot say that we got — I couldn't find anything in the record about a written — So we don't have an internal affairs file. You don't have an internal — So we have no idea what it was that she complained about, what was investigated. All we have is a letter saying it's not sustained or exonerated as against the office. Well, Your Honor, I would disagree with the notion that we don't have any indication of what she complained about. Because the evidence — What I don't understand is why didn't you — did you ask for the internal affairs file? I believe we got some of the portion, but we also have her testimony. We have the fact that she made the complaint from the hospital after being treated for the cut to her face, the bruises to her body. I would submit — I guess part of the problem I'm having is there was very little actually introduced at trial. I mean, there may have been extensive discovery here, but this was, what, a two-witness trial? Which, Your Honor, I think is to the credit of Plaintiff's Counsel. We recognized we had what we needed to get the jury, and we rested. Well, if you've got a Monell claim against the county and the sheriff is the final policymaker with regard to a determination of use-of-force claims, I'm somewhat surprised that the sheriff's deposition was never even taken and that you didn't introduce whatever it was that you got from internal affairs so we'd have some inkling as to what it was that she complained about. Well, again, Your Honor, I think we do have an inkling. We have the fact that she was — But what evidence was presented at trial? Because we are not here on summary judgment. Right. The evidence presented at trial was the outrageous conduct of the officers. That was videotaped. There were video — yes, Your Honor. She didn't say at trial what she complained about to internal affairs. Not specifically. Okay. That's the issue, isn't it? Right. And I believe the jury could have reasonably, under the circumstances — It was kind of a leap, though. Your Honor, I don't think it's a leap. If you're beat up, you go to the hospital to be treated for your injuries, you call internal affairs, and then the other side, the county, doesn't come in to say, well, this is actually what she complained about. But I thought her complaint was racial profiling, that the only reason the officer stopped her in the first place was that she was Asian female. There were several things that I think — admittedly, several things that went wrong with that stop. However, I think a critical piece here is that it was videotaped. The videotape begins with the officer swearing at the motorist. And if in turn — Yes. Yeah. But there's no indication that she heard that. Well — Just out of — I thought it was rude, but I didn't — So here's what I'm getting at. You have a video recording of an officer swearing at a motorist twice, pulling her over under at least disputable circumstances, engaging in what a jury unanimously found to be excessive force. Under these circumstances, if internal affairs is reviewing that, all they need to do is put the tape in the recorder and press play and see what happened. Except for their review would depend on her complaint. And we don't know what her complaint is. So that's the big problem. We don't know what was ratified allegedly by the sheriff. Well, so we know that the deputy — Tell us what was exactly. It was the excessive force. It was the use of force, which the sheriff found to be proper. We understand that. We understand what the jury found. I think we're struggling with is proof of ratification. Well, proof of ratification, then we're on a — we're looking at something slightly different. Well, we're just looking at the letter. That's the only piece of evidence that was before the jury to support the ratification claim. Well, so if we're talking about what was the subject of the IA investigation, again, I think there was enough there where if the deputy isn't interviewed, we know Deputy Forrest wasn't interviewed. So all they would have had to go on — Can you point me in the letter of July 29, 2015, how I can determine from looking at that letter what it was that Internal Affairs investigated? They're — they are approving the way that this was handled. They are — Well, that was not my question. Point me to language in the letter that will answer my question as to what it was that Internal Affairs investigated. Well, Your Honor — I don't see it. That's a fair point, Your Honor. And what I'm pointing — That was the only evidence that was before the jury as to — Ratification? Ratification. Well, Your Honor — And a signature over the typewritten name of Lori Smith, Sheriff, by Sergeant Paula McAllister of Internal Affairs. That's the only — I mean, I know enough about ranks and police departments to know that sergeants are kind of down the ladder there from the sheriff at the top of the ladder. So, Your Honor, that kind of transitions into more the subject of ratification than what was the IA about. But you have to prove that the sheriff ratified the conclusion that Sergeant McAllister apparently reached as reflected in this letter? If we say, yes, that she ratified it, the sheriff ratified, we don't know what the sheriff ratified. That's the issue for me. And that's why the greater context is so important, because it's what happened. It's the fact that it was recorded. It's the fact we know some kind of IA investigation allegedly took place. And if they see what was recorded, which I think is a reasonable inference, if they see what's recorded, that came to their attention and they approved it. Approved what? They approved the way that — I'll say this letter says we — Approved — This letter constitutes a complete and thorough approval of the actions of the sheriff's deputies in this circumstance. I would analogize this in medicine. They call it an incidental finding. Whatever they're looking at, if I actually conducted an investigation, if they actually looked at what happened, they would say, maybe she complained about one thing. But, hey, we've got two officers who engaged in excessive violence. I think we understand your argument on that point. Before you run out of time, tell us what your complaint is about the reduction of the fees down to $350,000. Do I have that right? That's correct, Your Honor. And you can begin by telling me yes or no. Did you really have five lawyers waiting around for the jury verdict? I don't know that we had five lawyers. Were you there? I was there. There were nine questions from the jury. It's a very active jury. Were there five lawyers from your firm there? Your Honor, I would want to be careful about recalling the number. More than three? The trial team was there. The trial team. Trial team was how many? Three lawyers. Yeah. So what's wrong with the reduction? Tell us. Well, so... We understand your argument on Monell. Yeah. But the reduction... If you lose Monell, what's your argument? Just say hypothetically. Then you have... The other issue is the double counting of the factors. The judge in calculating the lodestar... You don't really know that she double counted. She just double mentioned him. Well, just a plain reading of the order appears in multiple places to reduce the lodestar based on simplicity of the case. And then after the fact, an additional reduction. This is where we get the $85,000 reduction. And a piece of that is due to the simplicity of the case. Do you run any risk of us reducing him further? No, because for one thing... I appreciate that, your Honor. That's near and dear to my heart. For one, the question... We're not going to lose Monell again. So to the extent the judge reduced our fees because we didn't get all of our causes of action, that's not going to happen. And then in addition to that, with the $85,000 or so that were reduced, that again was because of the double counting. So what we would ask is that either the lodestar be restored and not reduced because of the alleged simplicity of the case, or increase it on the other end as to the $85,000. I have to tell you what bothers me about this case is that at least as it was tried, this case is about as simple as it gets. The arresting officer and the plaintiff and a video. And you spent almost a million dollars litigating this case. Well, your Honor... What's so complex about this claim that it required a million dollars to investigate and prosecute? Again, it wasn't a million, just to be clear. It was at least more than $100,000 less than a million. The complexity... It's getting closer to a million than it is to zero. The complexity of the case. What's... The county had multiple experts. The county had multiple experts on the damages. The jury was nearly deadlocked. Did you take their depositions? I did. Yeah, we took the deputies' depositions. My recollection is we took PMK depositions. We took the expert depositions. We successfully kept their expert out of the case. That would have been another expert or another witness testifying. Again, nine jury questions. The case was reopened for closing argument. A lot of motion practice. A lot of dealing with subpoenas. I mean, that gets a little bit to the complexity question, I think. Do you want to save some time for a rebuttal? I would. Thank you. All right. Thank you, Counselor. I'm sorry. I'm losing it.  Morning, Your Honors. May it please the Court. I'm Michael Cerveria, and I am the attorney representing the appellee, Santa Clara County. A couple of factual things to clear up. Chang's lawyers deposed the internal investigations sergeant. Can you turn the mic up a little bit and speak a little louder? Thank you. Sure. Sergeant McAllister. Sergeant McAllister. Paula McAllister, who performed the internal affairs investigation, was deposed by plaintiff's counsel. There were two other PMK depositions with respect to county policies and county discipline. They also deposed the involved arresting officers, Deputy Forrest and Deputy Strickland. If you're going to allege that Sheriff Smith ratified an unconstitutional act, you need more evidence than testimony from the plaintiff that she made some complaint to internal affairs and a vague letter that she received. If there was a writing signed by Sheriff Smith exonerating the deputy's use of force or even specifics from Chang at trial as to what she complained about, the specifics of her complaint, who she complained about, we might be in a different place. But they made a tactical decision at trial not to ask those questions of their client. Who did you complain to? What did you complain about? Who did you complain about? What did they do to you? Those are all very simple questions that they chose not to ask their client. The sum and substance of the testimony was that Chang complained to IA, that she spoke to two people, and that she was notified of the investigation when she received a letter, which was page 159 of the excerpts. The letter doesn't have Deputy Forrest's name on it. Deputy Strickland's name isn't on it. And it doesn't reference excessive force or any topic that was specifically investigated. Chang herself admitted at trial that the letter doesn't even say who was exonerated. And contrary to the inferences that are set forth in their brief, there is nothing in the letter that Forrest was exonerated for using excessive force. When the signatory of the letter, the sergeant, she was deposed. You've told us that right at the start. Right. Sergeant McAllister signed the letter. In her deposition, did she say what she was investigating? It wasn't offered at trial, though. Is that the issue? It was. I do not recall in her deposition if she was asked those questions. She didn't testify at trial. She did not testify at trial. Her deposition was not admitted at trial? Correct. However, she was on the amended witness list, which is at SCR 37. We had a joint witness list. So Sergeant McAllister was on that list. Again, the plaintiff made the decision not to call her as a witness at trial. Let's suppose we agree with you on Monell. The panel does. And let's talk, what's the reduction that we're talking about? Assuming that your position is correct on Monell, what bracket of reduction are we talking about? And do you have an interest in this? Do you have an indemnification agreement with the officers? No. Okay. It's our position that Judge White did not abuse his discretion when he reduced. I'm just trying to frame it in my own mind. Is it a reduction from 450 to 350? Or what's the bracket? Right. So initially they asked for 970. Judge White did the lodestar, reduced the 970 to 435, I believe. Then he looked at overall success on the merits. He looked at the issue that they didn't prove to his satisfaction that they bypassed other work or that there was other work that they couldn't do. And then there's one thing that I've read his decision, obviously. There's one thing, and correct me if I'm wrong, that he did not mention, and that's the difficulty in proving this kind of case. Well . . . Specific facts. But I've been doing this for 22 years, and we've probably had several hundred excessive force cases go on. Sometimes we send them back. Sometimes we affirm the grant of summary judgment. And occasionally I talk with the district judges after the cases have gone back. The cops always win. I would say 95% of the time the cops win, because those jurors get in the jury room and they say, these guys are out to protect us. Why shouldn't we whack them? So why not include in the conclusion about the type of fees how difficult these cases are to prove, and some sort of resilience, if you will, for the fact that you take on, for every loser you have, maybe you get one in ten winners. Right. And courts have looked at the difficulty of a case. The question is, did Judge White? Well, we had a video in this case which simplified things greatly. Did Judge White take into consideration in the fee reduction the difficulty of these cases, how difficult they are to win, and how infrequently plaintiffs do win? No. That is not expressed in his order. I'm not sure. And I'm not sure he saw it that way either. I mean, he. Isn't that a fair consideration? It was a consideration in the Morales case, the Morales v. San Rafael case, 96 F. 3rd, 359. And that is a consideration. I believe in the AD v. CHP, which was a district court case, 2013 WL619-9577, Judge Ilsen wrote that opinion. In both of those cases, courts recognized, especially in the CHP case, that the plaintiff had an uphill battle in those cases, and recognized the difficulty that they had to persevere, and also took into account roadblocks that, for lack of a better term, that defense counsel posed in those cases. But we didn't have that in this case, Your Honor. We didn't file a motion to dismiss. We didn't file a motion for summary judgment. We didn't raise qualified immunity. We didn't even have a discovery motion. I think you've answered my question about what was or not included in his analysis in reducing the fee as he did. How about the fact that I've watched the video, and I got to tell you, I'm astounded that the plaintiffs won this case, that they got a dollar in damages. That initial bad language, it's unclear whether she heard it or not, but from the moment they approached the car in their entire dealings, don't hit me again, or I will have to take you into custody, she hits him again. Don't kick me. Don't bite me. I'm astounded they were able to win. There's nothing in the fee calculation that talks about how difficult this case was to win. Again, Your Honor, there is nothing in the fee calculation that talks about how difficult Should there be? Well, I wasn't as confident going into trial as you just laid it out. I think minds can differ about the officer's conduct and the deputy's conduct when he pulled her out of that car, roughly placed her up against the side of the vehicle, roughly, and took her to her car. So this was a case that needed to be tried. This was a case that both sides tried, but Judge White's opinion really focused on the and that the entire event, for the most part, was captured on video. Certainly the arrest itself and the extrication from the vehicle was all captured on video. Do you have anything to add about the attorney's fees? Not really, Your Honor. I mean, it's a simple, you know, our position is that the judge did not abuse his discretion when he reduced the lodestar from $435,000 to $350,000, which we think for a $40,000 verdict is quite adequate. And it's not so low that it would discourage lawyers from taking these kinds of cases. But on the other hand, it curbs or discourages the inefficiencies that in reducing the $970,000 that they originally requested. And that took into account all of the trial work and then the fees on fees for the various motions and costs. So that's all I've really got on that, Your Honor. Unless anybody has any further questions. I think you've answered our questions. Thank you. Thank you. Your Honor, difficulty of winning should be considered by the district court. And it should have been considered here. Judge Hawkins is absolutely correct. These are difficult cases. The public, as a general proposition, will believe the officers. And yes, we had the video. But the video, obviously, reasonable minds may differ over what the video says or what the video shows. We think the video, the live testimony, when it's taken together, clearly these acts took place. And an aspect of the Minnell, and I haven't given up on the Minnell liability yet, an aspect of that is no one talked to Deputy Forrest, and after this all transpired at trial, Deputy Forrest testified when asked, paraphrasing, whether he was a little concerned about Dr. Chang. He said, my conduct was absolutely acceptable. And that is consistent with a policy that was in existence at the time of the interaction with Dr. Chang. And in place when IA looked at the- How do we know that? There's no evidence in the record as to what that policy was. Well, the policy was best spoken by Deputy Forrest on trial. Before you run out of time, let me ask you a question that can either be answered with a yes or no, and that's all I want. In your fee application and your motion for attorney's fees, and in any of the writings that you presented to Judge White, did you ask for consideration of how difficult these cases are to win? Your Honor, mea culpa. I just do not recall specifically whether that was requested. Okay. You don't recall? Yeah. We can look. Did you have something else that you were appealing, another issue about leaving out the prior suits against these people? I'm sorry, Your Honor? Was there another issue that you were appealing about leaving out the prior- Well, thank you, Your Honor. The other aspect of this, in looking at the circumstances, I think the judge commented on the fact that there was no other evidence that Deputy Forrest was a problem. The judge had excluded the evidence that he was a problem several years before this incident. I think about seven years before this incident, he had arrested a woman fitting the description of Dr. Chang, and we ended up resolving, our firm ended up resolving that case for settlement of $300,000, and we learned that Deputy Forrest was not trained further in any way. I thought the issue there was whether there was a misidentification of the wanted person. So he arrested the wrong person. Went into her office and arrested somebody. Yeah. That's a very different claim from an excessive force claim. You're right. It's a different claim from excessive force. So how is that relevant given our Ninth Circuit case law with regard to the admission of 404B evidence? Sure. It's relevant- Racial profiling. I'm sorry? Racial profiling. Exactly. Racial profiling. Or simply arresting the wrong person for the crime? Well, and treating her with a very heavy hand. And these are arguments that if we had been allowed to bring it in, of course, the county could say, well, that was many years ago, and- But isn't it an application of the four-factor test and then a determination as to whether the district court abused its discretion in applying the four factors? And, Your Honor, we won't be retrying that issue. It's more along the lines of when the court is saying there's a failure of evidence and we're blue in the face saying, but there is evidence, we just couldn't give it to the jury. Well, the question is, is there relevant admissible evidence that was kept out versus evidence that the district court determined was not relevant and was overly prejudicial? I understand, Your Honor. Okay. Thank you both very much. The case is just very much- Great job. And we're adjourned for the day.
judges: Hawkins, Tallman, Jack